**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOUSSA DIAWARA<br>Plaintiff,<br>v.<br>JAMES PERCIVAL *et al.*,<br>Defendants. | Case No. 26-cv-3841 (JMC) |

## MEMORANDUM OPINION AND ORDER

Moussa Diawara is in danger. In part, he is in danger because the Department of Homeland Security, its General Counsel, and Immigration and Customs Enforcement told millions on social media that Diawara sought asylum in the United States by falsely claiming to fear persecution on account of his sexual orientation. "Fake & Gay!" ICE wrote, seeming to delight in mocking Diawara as it reposted purported copies of his asylum application and broadcast his sensitive information to the world. This conduct is hard to square with the DHS's long-recognized commitment to safeguarding the confidentiality of asylum-related information, a commitment based in the recognition that disclosure of that information may create new risks of retaliation and persecution. *See Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008).[1]

Diawara now seeks a temporary restraining order to enforce the confidentiality protections for asylum-related information embodied in 8 C.F.R. § 208.6 (2020).[2] The protection provided by

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] DHS amended 8 C.F.R. § 208.6 by rulemaking in late 2020. *See* Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80274, 80386 (Dec. 11, 2020). Before the amendment took

that Section admits of few exceptions. The one at issue here is a discretionary confidentiality-waiver provision. The Parties disagree about who may authorize disclosures under that provision and whether it was invoked in Diawara's case. The Court concludes that this authority belongs to the Secretary of Homeland Security. And on the currently limited factual record, Diawara has not met his burden to show that the disclosures were likely made without authorization under § 208.6. As a result, Diawara has not demonstrated a likelihood of success on the merits of his contrary-to-law claim. Furthermore, the Court cannot assess whether the disclosures were arbitrary and capricious without the administrative record. Accordingly, while the Court is deeply troubled by Diawara's allegations, his motion for a temporary restraining order is **DENIED**.

## I. BACKGROUND

Moussa Diawara is a citizen of Mali who lived in the United States for more than two decades. ECF 1 ¶¶ 9, 21. He has a wife and two children, all of whom are United States citizens. *See id.* ¶ 41. In immigration proceedings, Diawara applied for both asylum and withholding of removal, asserting that he feared persecution in Mali because of his religious conversion and sexual orientation. *See id.* ¶ 20; ECF 5 at 2–3, 7. An immigration judge ordered Diawara removed but granted his application for withholding of removal to Mali, ECF 1 ¶ 20, based on a finding that his "life or freedom would be threatened" there. 8 U.S.C. § 1231(b)(3)(A). A few months ago, Diawara was arrested near his home by ICE officers and placed on a flight to Ghana. *Id.* ¶ 21. Within days, Ghanaian officials sent Diawara onward to Mali, where he was temporarily detained by Malian police. *Id.* He soon fled to Côte d'Ivoire, where he remains today without a passport or stable immigration status. *Id.* On September 15, 2026, Diawara sued to challenge what he alleges

effect, it was enjoined by a district court in an APA challenge. *See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021). The Parties agree that the injunction remains in place and that the pre-amendment version of 8 C.F.R. § 208.6 is operative. *See* ECF 5 at 8; ECF 8 at 11–12. Accordingly, the Parties' arguments and the Court's analysis are based on the statute's pre-amendment text.

was the Government's circumvention of his order of withholding of removal to Mali. *Id.* ¶ 22; *see also* Complaint, *Diawara v. Mullin*, No. 26-cv-3440 (D.D.C. Sep. 15, 2026), ECF 1. That case remains pending before this Court.

On October 25, 2026, CBS News broadcast a *60 Minutes* segment about Diawara's removal. ECF 1 ¶ 23. News reports indicate that CBS obtained a comment from the Department of Homeland Security regarding Diawara's removal on October 6, 2026, nearly three weeks before the *60 Minutes* segment aired. *Id.* ¶ 24. In it, the DHS press office indicated that Diawara was "married to a woman he shares 2 children with" and "oddly claimed he would be persecuted for homosexuality if returned home to Mali." *Id.* However, the *60 Minutes* piece did not disclose Diawara's sexual orientation or its role in his application for asylum and withholding. *See id.* ¶ 23.

The Department of Homeland Security, DHS General Counsel James Percival, and Immigration and Customs Enforcement apparently disagreed with CBS's approach. Soon after the *60 Minutes* segment aired, Percival took to the social-media website X. Posting from his official account, @DHSGenCounsel, Percival wrote, "I pulled [Diawara's] file. His claimed reason for fearing Mali was that he is 'gay,' just in case you're wondering how bad the immigration fraud problem is." *Id.* ¶ 25; ECF 5-1 at 2. DHS quickly followed up from @DHSgov, stating again that Diawara had "oddly claimed he would be persecuted for homosexuality if returned home to Mali." ECF 1 ¶ 26; ECF 5-2 at 2. So did ICE, posting several times from @ICEgov that Diawara "claimed he was a HOMOSEXUAL in order to try and dodge deportation to Mali." ECF 1 ¶ 26; ECF 5-3 at 2; *see also* ECF 5-4 at 2; ECF 5-5 at 2; ECF 5-6 at 2. These posts seemingly reflected Defendants' view that Diawara's marriage and asserted sexual orientation were necessarily inconsistent.

The following day, a Fox News correspondent posted documents purportedly from Diawara's "exclusively obtained . . . asylum application" on X. ECF 1 ¶ 28; ECF 5-15 at 2. These

included "his account of his sexual orientation and his conversion[] and the threats made against him" as a result. ECF 1 ¶ 28; ECF 5-15 at 2–5. ICE recirculated these pages on X, commenting, "Fake & Gay!" ECF 1 ¶ 29; ECF 5-17 at 2. DHS likewise reposted the pages, stating, "This is immigration fraud. . . . Diawara, an illegal immigrant from Mali, claimed he would be persecuted for his homosexuality if he was returned to his home country—despite being married to a woman he has two children with." ECF 1 ¶ 29; ECF 5-18 at 2. Not to be outdone, Percival posted a meme with the text "I'm not gay no more!" while commenting, "Illegal aliens after they lie to get asylum." ECF 5-19 at 2. Collectively, Defendants' posts about Diawara have been viewed more than eleven million times. *See* ECF 1 ¶ 30.

Diawara filed this action on November 2, 2026, against DHS General Counsel James Percival, Secretary of Homeland Security Markwayne Mullin, and Acting ICE Director David Venturella, each in their official capacity. ECF 1. Diawara brings two causes of action under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See* ECF 1 ¶¶ 48–61. He alleges that the disclosures were arbitrary and capricious and contrary to 8 C.F.R. § 208.6(a) (2020), the DHS regulation which provides that "information contained in or pertaining to any asylum applications . . . shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General." Diawara immediately moved for a temporary restraining order based on his APA claims. ECF 5. He seeks an order directing the removal of the existing social-media posts and preventing future disclosures of information related to his asylum application. *Id.* at 11. In support of his motion, Diawara submitted a declaration by counsel which averred that Diawara had not consented "to the disclosure by the Government of any information contained in or pertaining to his application for asylum and withholding of removal." ECF 5-9 ¶ 7. Diawara also alleges, on information and belief,

that "neither the Attorney General nor the Secretary [of Homeland Security] authorized the disclosures." ECF 1 ¶ 18.

Defendants oppose the motion. ECF 8. As relevant here, they argue that the disclosures were consistent with 8 C.F.R. § 208.6, and are, therefore, not contrary to law. *See id.* at 25–31. This is not their first comment on the topic. Soon after Defendants' social-media posts began, another X user suggested to Percival that his posts may run afoul of § 208.6. ECF 1 ¶ 27; ECF 5-7 at 2. Percival replied, "Notice how the Left only cares about the rule of law when they can use it to prevent systemic fraud from being exposed. But of course I disclosed this consistent with regulation." ECF 1 ¶ 27; ECF 5-7 at 2. Defendants' opposition provides further explanation, citing a November 2025 memo signed by then-Secretary Kristi Noem which "authorize[d] the Assistant Secretary for the DHS Office of Public Affairs (OPA) and the Director (or Acting Director) of Immigration and Customs Enforcement (ICE) to disclose asylum and protection-related information to third parties in cases with media significance, for purposes of promoting transparency, accountability, and public awareness." ECF 8-2 at 1. The memo includes the handwritten addition, "with notification to me every time we exercise this authority." *Id.*

Defendants submitted a declaration by Gregory Hornsby, Acting Deputy Assistant Director for the ICE Office of Public Affairs, currently detailed as Chief of Staff to Acting Assistant Secretary for the DHS Office of Public Affairs, Katherine Currie. ECF 8-1 ¶ 1. Hornsby declared that after CBS News contacted the DHS Office of Public Affairs on October 2, 2026, Acting Assistant Secretary Currie reviewed Diawara's case under the authority delegated by Noem's November 2025 memo. *Id.* ¶¶ 3–4. Currie determined that Diawara's case "carried considerable media significance," and she "authorized the disclosure of information relating to Mr. Diawara's immigration case." *Id.* ¶ 4. Currie then "communicated this decision to the Acting Assistant

Director for ICE's Office of Public Affairs and staff within DHS [Office of Public Affairs]." *Id.* After the *60 Minutes* broadcast on October 25, 2026, "General Counsel Percival disclosed information previously authorized for disclosure by Acting Assistant Secretary Currie." *Id.* ¶ 5. Curiously, Defendants also argue that Currie "*could have* authorized the disclosures when they occurred" and that she "still held the discretion delegated by the Secretary at the time of ratification after the fact," citing Hornsby's declaration. ECF 8 at 30 (emphasis added). But Hornsby's declaration does not describe any after-the-fact ratification. *See generally* ECF 8-1.

In addition, Defendants argue that the disclosures were not arbitrary and capricious and that the Court may not grant relief on that claim without reviewing the administrative record, which has not yet been filed. ECF 8 at 31–33.

## II. LEGAL STANDARD

A motion for temporary restraining order is assessed under the same framework as a motion for preliminary injunction. *Church v. Biden*, 573 F. Supp. 3d 118, 132 (D.D.C. 2021) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011)). To obtain a temporary restraining order, it is Diawara's burden to show that (1) he is likely to succeed on the merits; (2) irreparable harm is likely absent the restraining order; (3) the balance of equities favors preliminary relief; and (4) the order is in the public interest. *RFE/RL, Inc. v. Lake*, 780 F. Supp. 3d 269, 277 (D.D.C. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Likelihood of success requires "more than a mere possibility of relief." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## III. ANALYSIS

Based on the limited facts before the Court, Diawara has not shown that he is likely to succeed on his claim that Defendants' disclosures were contrary to § 208.6.[3] And without the

[3] Because the Court concludes that Diawara has not established a likelihood of success on the merits, it does not address the remaining requirements for a temporary restraining order.

administrative record, it is premature to assess whether the disclosures were arbitrary and capricious. While Diawara's allegations raise real concerns, the Court is left, at this stage, with more questions than answers. Accordingly, his motion for a temporary restraining order is denied.

### A. Diawara Has Not Established a Likelihood of Success on His Claim That the Disclosures Were Contrary to 8 C.F.R. § 208.6.

Agencies "must adhere firmly to self-adopted rules by which the interests of others are to be regulated." *Mass. Fair Share v. L. Enf't Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Battle v. Fed. Aviation Admin.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("Agencies may not violate their own rules and regulations to the prejudice of others."). "An agency's failure to abide by its own regulations" to an individual's detriment may be challenged under the APA, 5 U.S.C. § 706(2). *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018). That's what Diawara alleges under Count One—that Defendants' disclosures were contrary to 8 C.F.R. § 208.6 and, therefore, violated the APA. ECF 1 ¶ 51. The problem for Diawara's motion is that the current record raises factual questions that are central to the merits of Diawara's claims but not amenable to resolution in this accelerated posture. As the record stands, Diawara has not established more than a mere possibility that ICE and DHS violated § 208.6. Accordingly, he has not shown a likelihood of success on the merits of his contrary-to-law claim under Count One.

Pursuant to 8 C.F.R. § 208.6(a) (2020), public disclosure of "information contained in or pertaining to any asylum application" is permissible only with an applicant's written consent "or at the discretion of the Attorney General." Diawara's position is straightforward. He did not consent to publication of his asylum-application information on X, ECF 5-9 ¶ 7, and nothing suggests that the Attorney General authorized that publication, ECF 5 at 8. Defendants do not dispute either contention. Instead, they say that the regulation's reference to the "Attorney

General" is a leftover from its promulgation by the Immigration and Naturalization Service under the Department of Justice, before the relevant immigration functions were transferred to the new Department of Homeland Security. ECF 8 at 12. What § 208.6 really means, they argue, is that the Secretary of Homeland Security has discretion to authorize disclosure of Diawara's records, *id.* at 12, and that discretion was exercised here by the Secretary's designee, *id.* at 13.

The Court concludes that Defendants have the better of the argument when it comes to interpreting where § 208.6 vests discretion. When Congress created the Department of Homeland Security, it addressed the potential problem of outdated references in existing statutes and regulations through saving provisions, including 6 U.S.C. § 552(d), which provides that statutory and regulatory "references relating to an agency that is transferred to the Department [of Homeland Security] . . . shall be deemed to refer, as appropriate, to the Department, [and] to its officers." *See also* 6 U.S.C. § 557 ("Reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary [of Homeland Security], other official, or component of the Department [of Homeland Security] to which such function is so transferred."). Relying on §§ 552(d) and 557, the Supreme Court has construed references to the "Attorney General" in the Temporary Protected Status statute, 8 U.S.C. § 1254a, to instead confer authority on the Secretary of Homeland Security. *See Mullin v. Doe*, 609 U.S. 324, 331 (2026); *see also Nat'l TPS All. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-1766, 2026 WL 3083864, at *5 (N.D. Cal. Oct. 14, 2026) ("The route that Congress followed was to broadly reassign functions . . . and then add a statutory provision that deems references to other officers to refer to the Secretary.").

The Court does not see a reason that distinguishes this case from *Doe*. While Diawara is correct that an earlier out-of-circuit case, *Lin v. DOJ,* stated that the discretion afforded by § 208.6

lies with the Attorney General, the court in that case was merely repeating the text of the regulation. 459 F.3d 255, 267 (2d Cir. 2006). Because the discretionary waiver provision was not at issue, the Second Circuit was not called on to address § 552(d) or its effect on § 208.6. *See id.* at 262. Diawara also suggests that § 552(a)(1)—which provides that the "completed administrative actions" of agencies that were transferred to the DHS would "continue in effect according to their terms until amended . . . in accordance with law"—means that § 208.6's reference to the Attorney General remains unmodified. ECF 9 at 3. That reading does not square with § 552(d)'s express application to transferred rules and regulations. *See Air Line Pilots Ass'n, Int'l v. Pension Benefit Guar. Corp.*, 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002) (noting the "well-established principle" that courts should read statutes "so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory"). Instead, these subsections work in tandem. Section 552(a)(1) provides that the DHS reorganization did not rescind or substantively change existing regulations, while § 552(d) updates references in those existing regulations to account for the new DHS context. Accordingly, the Court concludes that § 208.6 grants the Secretary of Homeland Security discretionary authority to disclose asylum-application-related information.

Defendants assert that this discretion was properly invoked to disclose Diawara's asylum-application information. Based on the limited factual record before the Court, Diawara has not established that the challenged disclosures were likely made *without* that authorization. Section 208.6's discretionary waiver authority was delegated by then-Secretary of Homeland Security Kristi Noem to the Assistant Secretary for the DHS Office of Public Affairs in a November 2025 memorandum. *See* ECF 8-2; *see also* ECF 8-1 ¶ 2. This delegation is consistent with 6 U.S.C. § 112(b)(1), which permits the Secretary of Homeland Security to "delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department [of

Homeland Security]," "except as otherwise provided by this chapter." Diawara does not argue that § 208.6's waiver authority is nondelegable by statute, and nothing before the Court suggests that Noem's memo is no longer in effect. Instead, Diawara contends that the Noem memo did not permit its designees to authorize *other* officials to disclose sensitive information, and that there is no indication that the Acting Assistant Secretary authorized the specific disclosures at issue. ECF 9 at 4–5. Neither contention carries the day in this posture.

While the Noem memo "authorized" named designees "to disclose asylum and protection-related information," it did not suggest that those designees could not act through others to effectuate a disclosure. *Cf. U.S. Telecomm. Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("Subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent."). And though the precise scope of Currie's authorization remains ambiguous, it is Diawara's burden to show that the agency's disclosures were likely unauthorized. *See Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 101 n.3 (D.D.C. 2021) ("On the present [TRO] motion, it is *plaintiff*[*'s*] burden to establish a likelihood of success on the merits . . . . Arguments made in briefs disputing isolated aspects of the government's declaration fall short of carrying that heavy burden."). The record before the Court indicates that the DHS Secretary's designee, Acting Assistant Secretary Currie, exercised § 208.6's discretionary-waiver authority to authorize disclosure of "information relating to Mr. Diawara's immigration case." ECF 8-1 ¶ 4. This authorization was communicated to individuals in the DHS and ICE Offices of Public Affairs. *Id.* It is at least a plausible inference, then, that the subsequent

disclosures on the DHS and ICE X accounts were made with Currie's authorization.[4] Perhaps they were not. But at this early stage, Diawara has not established that a lack of authorization is "likely."

This is not to say that the record vindicates Defendants. Their curious assertion that Currie "could have authorized the disclosures when they occurred" and their reference to "ratification after the fact," ECF 8 at 30, appear at odds with the contention that disclosure was authorized in advance, *see id.* at 29. These statements are made all the more curious by Defendants' citation to the Hornsby declaration, *id.* at 30, which says nothing about after-the-fact ratification, *see* ECF 8-1. Does this indicate that the challenged disclosures were not, in fact, authorized in advance? What was the actual scope of Currie's authorization? And what should the Court make of the roughly three-week gap between Currie's determination and the challenged disclosures? On this record, there are more questions than answers. The Court acknowledges the gravity of Diawara's allegations and is amenable to ordering production of the administrative record to begin to address the factual questions presented by this case. But until then, the Court concludes that Diawara has not met his burden, at this early stage, to show that the disclosures were likely unauthorized. Therefore, he has not shown a likelihood of success on his contrary-to-law claim. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006).

---

[4] General Counsel Percival is perhaps differently situated. Percival's own words—"I pulled [Diawara's] file"—are indicative of an independent decision to disclose Diawara's records. ECF 5-1 at 2. And Hornsby's carefully worded declaration also appears to avoid the issue of whether Percival acted with Currie's authorization, stating only that "Percival disclosed information previously authorized for disclosure." ECF 8-1 ¶ 5. However, there is no argument before the Court that an order to Percival alone would likely provide redress to Diawara if the DHS and ICE posts remained online, and it seems unlikely to the Court that it would. *Cf. Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007) ("There might be some circumstances in which governmental action is a substantial contributing factor in bringing about a specific harm, but the undoing of the governmental action will not undo the harm, because the new status quo is held in place by other forces.").

### B. The Court Cannot Assess Whether Defendants' Disclosures Were Arbitrary and Capricious Without Reviewing the Administrative Record.

Diawara's second count alleges that, "even if an official with authority under section 208.6(a) had decided to permit the disclosures, each decision would be arbitrary, capricious and an abuse of discretion." ECF 1 ¶ 55. "The Court's arbitrary and capricious inquiry 'depends not solely on the agency's authority, but instead on the agency's ability to demonstrate that it engaged in reasoned decisionmaking.'" *Farrell v. Tillerson*, 315 F. Supp. 3d 47, 69 (D.D.C. 2018) (quoting *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 619 (D.C. Cir. 2017)). "In order to allow for meaningful judicial review" of this issue, "an agency must produce an administrative record that delineates the path by which it reached its decision." *Id.* (quoting *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 339 (D.C. Cir. 1989)). Diawara argues that "Defendants chose to put the decision in play by describing it in a declaration," ECF 9 at 11, and that the current "record shows what the disclosures were actually for," *id.* at 8. But even in cases of "informal adjudication such as this," the Court's "review must be based on the full administrative record that was before the [agency] at the time it made its decision." *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). When, as here, the quality of agency decision-making is at issue, the Court would err by solely "rel[ying] on the Parties' written or oral representations to discern the basis on which the [agency] acted." *Id.* Because the administrative record is not before the Court, it cannot assess Diawara's likelihood of success on his arbitrary-and-capricious claim. To some extent, Diawara acknowledges this, suggesting that "the remedy is to order the record, not to deny relief." ECF 9 at 11. If Diawara intends to pursue a preliminary injunction, the Court will do so. *See Am. Bioscience*, 243 F.3d at 582 ("Before assessing . . . probability of success on the merits, [the court] should have required the [agency] to file the administrative record.").

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Diawara's motion for a temporary restraining order, ECF 5, is **DENIED**.

To date, Diawara has sought only a temporary restraining order. ECF 5. He may have done so in advance of seeking a preliminary injunction, but no such motion has been filed. Accordingly, it is further

**ORDERED** that the Parties shall confer and file a joint status report by November 13, 2026, advising whether Plaintiff intends to move for a preliminary injunction and, if so, proposing a schedule for submission of the administrative record for proper consideration of Plaintiff's arbitrary-and-capricious claim and briefing to follow.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: November 11, 2026